# EXHIBIT 1

## PREVIOUSLY FILED UNDER SEAL

CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1                  UNITED STATES DISTRICT COURT
 2               FOR THE EASTERN DISTRICT OF TEXAS
 3                        MARSHALL DIVISION
 4        _____
 5        VIRTAMOVE, CORP.,           :  Case No.
 6                 Plaintiff,         :  2:24-cv-00093-JRG
 7        v.                          :
 8        HEWLETT PACKARD ENTERPRISE
 9        COMPANY                     :
10                 Defendant.         :
11        _____
12        VIRTAMOVE, CORP.,           :  Case No.
13                 Plaintiff,         :  2:24-cv-00064-JRG
14        v.                          :
15        INTERNATIONAL BUSINESS      :
16        MACHINES                    :
17                 Defendant.         :
18        _____
19              VIDEOTAPED DEPOSITION OF SUSAN CAMERON
20                       VIA VIDEOCONFERENCE
21                   THURSDAY, OCTOBER 10, 2024
22             CONFIDENTIAL - FOR ATTORNEYS' EYES ONLY
23                     10:04 a.m. - 5:17 p.m.
24        Pages:  1 - 233
25        Reported by: Leanne N. Kowalyk, AR, RCR, CSR(A)

                                                      Page 1
```

```
 1            Deposition of SUSAN CAMERON held via
 2      videoconference:
 3            Pursuant to Notice, before James Neeson,
 4      Commissioner for taking oaths in the Province of
 5      Ontario.
 6                  A P P E A R A N C E S
 7      ON BEHALF OF THE PLAINTIFFS:
 8            KYLE CALHOUN, ESQUIRE
 9            BRANDON BROWN, ESQUIRE
10            CHRISTINE LOGAN
11            GRANT RIGDON, ESQUIRE
12            Kirkland & Ellis
13            555 California Street, 27th Floor
14            San Francisco, CA 94104
15            Telephone:  415.439.1400
16            E-mail:  kyle.calhoun@kirkland.com
17      ON BEHALF OF THE DEFENDANTS:
18            PETER TONG, ESQUIRE
19            Russ August & Kabat
20            4925 Greenville Avenue, Suite 200
21            Dallas, Texas 75206
22            Telephone:  310.826.7474
23            E-mail:  ptong@raklaw.com
24      ALSO PRESENT:
25      PETER GOODALE, VIDEOGRAPHER
```

```
 1        of California?
 2              A.   No, I don't think so.
 3              Q.   And is that something you asked
 4        Nigel about?
 5              A.   No, I didn't.  I didn't ask him
 6        that.
 7              Q.   And so what are you basing your
 8        understanding that they're not located in the
 9        Northern District of California on?
10              A.   Just my memory, so ...
11              Q.   Okay.  Has VirtaMove ever
12        discussed licensing its patents to companies in the
13        Northern District of California?
14              A.   Not to my knowledge, no.
15              Q.   Is that something that you looked
16        into in preparing to provide testimony today?
17              A.   Nigel and I discussed that.
18              Q.   Okay.  And what did Mr. Stokes
19        tell you?
20              A.   That the answer to that question
21        is no.
22              Q.   And has VirtaMove ever discussed
23        licensing its patents to any company?
24              A.   VirtaMove has not.
25              Q.   Has VirtaMove ever sent any demand
```

Page 115

```
 1        letters for patent infringements to any companies?
 2                  MR. TONG:  Objection.  Scope.
 3                  A.   I'm -- can you just rephrase that.
 4                  Q.   Sure.  Has VirtaMove or anybody on
 5        behalf of VirtaMove sent letters to another company
 6        demanding either a license or some money for using
 7        VirtaMove's patents?
 8                  MR. TONG:  Objection.  Scope.
 9                  A.   Are you referencing that in terms
10        of an infringement case?
11                  Q.   That is what I would be -- well,
12        for this question that's what I would be
13        referencing.
14                  A.   Yes.  Okay.  So yes.
15                  Q.   And who are those companies?
16                  A.   One company.
17                  Q.   And who is the one company?
18                  A.   AppFirst.
19                  Q.   AppFirst?
20                  A.   Yeah.
21                  Q.   And was that letter -- did that
22        letter relate to the patents that are at issue in
23        this case, the 814 and the 058?
24                  A.   I don't know.
25                  Q.   Did the letter relate to patents
```

Page 116

CONFIDENTIAL - ATTORNEYS EYES ONLY

1      at all, or was it some other demand letter for
2      other types of intellectual property?
3              A.   No, it was related to the patents.
4              Q.   Okay.  And when did AppZero send
5      that letter?
6              A.   I'm going to have to guess because
7      it's quite sometime ago.  2011 or -- 2011 I want to
8      say, 2011 or 2012, something like that.
9              Q.   And did AppFirst ultimately pay
10     VirtaMove any money in response to those
11     discussions?
12             A.   Yes.
13             Q.   And how much money?  Do you know?
14             A.   I don't remember the exact number,
15     but it was quite a low -- it was a low amount.
16             Q.   And where is AppFirst based?
17             A.   I'm not entirely sure.  Again, it
18     was a long time ago.  I'm not really sure.  I think
19     it's in the northeast US, but, again, I would need
20     to check.  I really don't know.
21             Q.   And did one of VirtaMove's former
22     employees work at AppFirst?
23             A.   Yes.
24             Q.   Was that employee Donn Rochette?
25             A.   Yeah.

Page 117

```
 1                  Q.   And is that the reason why
 2     VirtaMove targeted AppFirst for that letter is
 3     because Donn Rochette went over there and developed
 4     technology?
 5                  A.   I don't know.  That was before I
 6     joined, when they -- this process started.  I don't
 7     know.
 8                  Q.   Okay.  So as far as you're aware,
 9     the one patent demand letter that VirtaMove sent
10     was sent to a company that had employed one of the
11     inventors in the patents; is that right?
12                  A.   I think David Roth was also
13     involved in that.
14                  Q.   And David Roth, he's a former CEO
15     of Trigence?
16                  A.   Yes.
17                  Q.   And he went on to start a company
18     called AppFirst?
19                  A.   Yes.
20                  Q.   And after he and Mr. Rochette
21     started AppFirst, VirtaMove sued AppFirst -- or
22     withdrawn.
23                       After Mr. Roth and Mr. Rochette went
24     and started AppFirst, VirtaMove sent AppFirst a
25     demand letter related to patent infringement;
```

Page 118

CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        REPORTER'S CERTIFICATE
 2
 3             I, Leanne N. Kowalyk, AR, RCR,
 4        CSR(A), Certified Shorthand Reporter, certify;
 5             That the foregoing proceedings were
 6        taken before me at the time and place therein set
 7        forth, at which time the witness was put under oath
 8        by me;
 9             That the testimony of the witness
10        and all objections made at the time of the
11        examination were recorded stenographically by me
12        and were thereafter transcribed;
13             That the foregoing is a true and
14        correct transcript of my shorthand notes so taken.
15
16             Dated this 11th day of October, 2024.
17
18
19
20
21        Leanne N. Kowalyk, AR, RCR, CSR(A)
22        CERTIFIED REALTIME REPORTER
23
24
25
```

Page 231